709 So.2d 883 (1998)
STATE of Louisiana, Appellee,
v.
William TAYLOR, Appellant.
No. 30310-KA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*885 Allan Ray Harris, Shreveport, and Peggy J. Sullivan, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Paul Joseph Carmouche, District Attorney, Catherine M. Estopinal, Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
In July of 1996, Shreveport police responded to a silent alarm emanating from the Boys' and Girls' Club. Shortly thereafter, a perimeter was established around the area, and a police dog located William Taylor, the defendant, hiding in an outside stairwell. Officers determined that a forced entry had been made into the building where white residue from the metal siding would rub off when touched; Taylor's hands, forearms and clothes were covered with white residue. Inside the building, camera and video equipment had been moved. Taylor made several incriminating and conflicting statements to the police at the scene of the crime.
Taylor proceeded to trial in Caddo Parish charged with one count of simple burglary, La. R.S. 14:62. A jury found him guilty as charged, and he was subsequently sentenced to five years at hard labor with credit for time served. From this conviction Taylor appeals urging seven assignments of error.[1] For the following reasons, we affirm.

*886 I.
The defense assigns as error the trial court's ruling that the three statements made by Taylor to police officers were admissible. Taylor made the statements after he was apprehended and handcuffed; at least one statement was made inside a police car. In the first statement, without any questioning by Officer Cain, Taylor volunteered that he was only the lookout for police, but that he did not enter the building. Taylor initiated this statement, but paused while Officer Cain read him his Miranda rights.[2] When Officer Cain asked Taylor if he understood his rights, Taylor continued to steadily talk. Officer Bice testified that he also recited the Miranda rights to Taylor who indicated that he understood those rights and agreed to make a second statement; Officer Bice additionally testified that he did not coerce any statements, most of which were blurted out. Finally, Taylor (for the third time) received his Miranda rights from Det. Germain expressly stating that he understood those rights, and agreed to waive them and make a statement. However, Taylor refused to sign the Miranda rights card under the mistaken belief that his signature would admit guilt. Taylor was later told by Det. Germain that it would be in his best interest to talk, but he made no statements thereafter. In brief, the defense argues that the total effect of the time, place and manner of the interrogation was unduly coercive and that no statements were freely and voluntarily made.
Before a confession can be introduced into evidence, the state must affirmatively prove that is was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La.C.Cr.P. art. 703 D. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La.App.2d Cir. 10/4/96), 681 So.2d 1023. Voluntary or spontaneous statements not given in response to custodial questioning or compelling influence are admissible into evidence despite any failure to comply with Miranda's prior warning requirements. State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985). Furthermore, a remark by the police telling the defendant that the officer will do what he can or things will go easier will not negate the voluntary nature of the confession. State v. English, 582 So.2d 1358 (La.App. 2d Cir.), writ denied 584 So.2d 1172 (La.1991). A trial court's determination on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned unless clearly contrary to the evidence. State v. Hicks, 607 So.2d 937 (La.App. 2d Cir.1992).
The statement made to Officer Cain, at least the portion preceding the Mirandization, was clearly spontaneous and properly admitted into evidence. State v. Hardeman, supra. Taylor's act of nodding instead of expressly stating that he understood his rights did not act to make his subsequent statements made to Officer Bice involuntary. State v. Hodges, 526 So.2d 1275 (La.App. 3d Cir.), writ denied 532 So.2d 174 (La.1988). The fact that the statements were made while Taylor was in a police car did not make the statements involuntary either, especially where there was evidence that poor weather conditions were present. Det. Germain's remark that it would be in Taylor's best interest if he cooperated, while vague, does not make Taylor's statements involuntary. Det. Germain did testify that he only meant to tell Taylor that "it's just helpful in court." State v. Petterway, 403 So.2d 1157 (La.1981).
The trial court found that Taylor made a knowing and intelligent waiver of his rights per Miranda, was promised nothing, and that his statements were freely and voluntarily made, in addition to the spontaneous ones. We find that the record supports that determination. Accordingly, this assignment lacks merit.

II.
By his third assignment of error, Taylor asserts that the trial court erred in denying his motion in limine to prohibit the state from referring to the defendant's statements *887 as a "confession" in opening statement. Defendant argues that the determination of whether a statement is a confession is "within the sole purview of the jury" and that the state's characterization impeded the jury's ability to make a fair and impartial determination. This issue is partly addressed by La.C.Cr.P. art. 767 which states:
The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case.
Because Taylor's statements to the police had already been ruled as admissible in a pre-trial hearing, the State was entitled to advert to them as a "confession" or an "inculpatory statement" in the opening statement. Therefore, this assignment lacks merit.

III.
Also assigned as error is the trial court's admittance of exhibit S-1 into evidence. Exhibit S-1 is a diagram of the crime scene which, according to Officer Cain, fairly and accurately represented the crime scene and would assist in explaining the pertinent events. The defense objected to its introduction because the diagram was not drawn to scale and no foundation was laid as to the dimensions of the buildings depicted in the diagram. The trial court overruled the objection.
Diagrams are generally admissible to aid the jury in understanding testimony if shown to be an accurate representation of the subject matter in question and the ruling of the trial court relative to admissibility will not be disturbed on appeal absent abuse of discretion. State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Fluitt, 482 So.2d 906 (La.App. 2d Cir.1986).
In brief, Taylor has not shown that the alleged lack of scale made the diagram misleading or prejudicial. We have examined the diagram and find that it corresponds to the testimony and adequately illustrates the layout of the Boys' and Girls' Club.
The trial court did not abuse its discretion in admitting s-1 into evidence. This assignment garners no merit.

IV.
Taylor additionally assigns as error the trial court's denial of his motion for mistrial on the ground that the prosecutor made comments in the presence of the jury about the costs of the damage to the Boys' and Girls' Club which unfairly appealed to the prejudice of the jury. With the jury present, the following colloquy occurred during assistant district attorney Eron Brainard's direct examination of Charles Patterson, program director for the Boys' and Girls' Club of Shreveport:
Q. Mr. Patterson, what was the cost to the Boys' and Girls' Club of
MS. WINGATE: Objection, your honor. Relevance.
MR. BRAINARD: I think it goes to the crime that was committed, your honor. The Boys' and Girls' Club has suffered damage, and that's going to take away from programs that are intended for the benefit of the boys and girls that are members of that club.
Thereafter, the trial court ordered the attorneys to approach the bench, sustained the objection and preserved defense attorney's right to move for mistrial. Shortly thereafter, the defense moved for mistrial based on the prosecutor's comments.
Discretionary mistrial is authorized when "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]" La. C.Cr.P. art. 775. However, mistrial is a drastic remedy and warranted only when substantial prejudice will otherwise result to the defendant to deprive him or her of a fair trial. State v. Smith, 418 So.2d 515 (La. 1982); State v. Stacy, 27,136 (La.App.2d Cir. 12/20/96), 686 So.2d 949. Nevertheless, the court may grant a mistrial if it is satisfied that the admonition will not assure the defendant a fair trial, but this is within the court's great discretion and will not be disturbed absent an abuse of discretion. State v. Ellis, *888 28,282 (La.App. 2d Cir.), 677 So.2d 617, writ denied 96-1991 (La.2/21/97), 688 So.2d 521.
Although we frown upon such comments in the presence of the jury, we find that they did not rise to the level of preventing a fair trial and warranting a mistrial. We are not convinced that the jury was influenced by the comments and that they contributed to the verdict. An admonition by the court would likely have cured any potential prejudice had defense counsel requested one. La.C.Cr.P. art. 711. Nevertheless, the general jury charge did caution the jurors to refrain from the influences of sympathy, passion and prejudice. In any event, the trial court is in the best position to evaluate the effects of the statements upon the jury and it did not abuse its great discretion in denying the mistrial.

V.
Taylor's fifth and sixth assignments contend the State failed to comply with the motion for discovery and inspection by making "no reference to expert witnesses" but then calling Sgt. Mark Rogers, to testify as an expert witness.[3] Defense counsel objected, arguing surprise and prejudice; the trial court found that the State did not comply with the discovery rules. Nevertheless, the court overruled the objection and defense counsel moved for mistrial which was denied. Citing State v. Hooker,[4] however, the court ordered a recess to allow defense counsel the opportunity to interview Sgt. Rogers to prepare for cross examination. The trial court further agreed to issue a subpoena should defense counsel desire to call an expert witness for its presentation of the case to counter Sgt. Roger's testimony.
On appeal, Taylor argues that the State's failure to provide the name of the expert witness to the defense violated the rules on discovery and resulted in prejudice constituting reversible error. The articles regulating discovery are intended to eliminate unwarranted prejudice which could arise from surprise testimony and evidence, to permit the defense to meet the state's case, and to allow a proper assessment of the strength of its evidence in preparing a defense. State v. Allen, 94-2262 (La.11/13/95), 663 So.2d 686. However, our review of the pertinent articles, La.C.Cr.P. art. 716 et seq., fails to indicate that a defendant is generally entitled to the names of witnesses the state intends to call. See, State v. Bennett, 591 So.2d 1193 (La.App. 1st Cir.1991), writ denied 594 So.2d 1315 (La.1992); State v. Loyd, 425 So.2d 710 (La.1982).[5] Moreover, the jurisprudence clearly indicates that a defendant is not entitled to the names of witnesses unless the court determines that there are peculiar and distinctive reasons why fundamental fairness requires such discovery. State v. Ondek, 584 So.2d 282 (La.App. 1st Cir.), writ denied 586 So.2d 539 (1991); State v. Washington, 411 So.2d 451 (La.1982) (per curiam); State v. Hines, 422 So.2d 1297 (La. App. 4th Cir.1982); see also Sandra L. Edwards, Discovery Of The State's Witnesses: State v. Walters, 43 La. L.Rev. 1549 (1983).
In State v. Bourque, 622 So.2d 198 (La. 1993), the defense sought, by pre-trial motion, the identity of all expert witnesses who would testify at trial, and the State responded by stating that it was not required to provide the answer. Id. at 238. At trial, the defense claimed surprise and objected when the State called the expert witness. Id. at 239. The State argued that it had received no reports from the witness and the trial court overruled the objection, noting no discoverable reports had been generated. The Supreme Court agreed, finding no technical violation of the rules occurred. Id.
Admittedly in Bourque the State responded to the motion for discovery by specifically denying any duty to provide a witness list, *889 whereas in the instant case the State made a general response, offering its file for inspection, but did not mention the existence of any expert witness until trial. Additionally, the defense, prior to trial, conceded that discovery was adequate. Arguably, the trial court erred in finding inadequate compliance with discovery.
Nevertheless, assuming without deciding that the State's responses were inadequate, we find that assignments of error on this point are without merit. Where the State's failure to comply with the discovery rules results in prejudice to the defendant, there is reversible error. State v. Harris, 627 So.2d 788 (La.App. 2d Cir.1993), writ denied 93-3188 (La.3/18/94), 634 So.2d 851. Therefore, it must be determined whether the defendant was actually prejudiced by the nondisclosure and whether the trial court abused its discretion. Id. Such prejudice could consist of surprise or a showing that the undisclosed evidence would have changed the defensive strategy. State v. Bosley, 29,253 (La.App. 2d Cir.1997), 691 So.2d 347, quoting State v. Hooker, supra. Trial courts may offset the effect of later disclosure by calling a recess or granting a continuance. Id.; La.C.Cr.P. art. 729.5. The trial court has wide discretion in fashioning a remedy, the propriety of which depends on the circumstances of each case. State v. Bosley, supra.
Materials provided in response to the discovery request made references to the lack of usable fingerprints thus alerting the defense to a possible issue. Although not argued by the State, the prosecutor in opening argument said that Sgt. Rogers would testify as an expert in fingerprint identification and summarized the subject matter upon which he would testify. Additionally, defense counsel admitted to meeting with Sgt. Rogers on the first day of trial, the day before this objection was raised on the record, and discovered his name and the area of his expertise. The following day, when the trial court heard the arguments on defendant's objection, the court took the measures described above to offset any effects of late disclosure under La.C.Cr.P. art. 729.5; State v. Hooker, supra. Subsequent to the recess, defense counsel neither cross examined Sgt. Rogers nor requested a subpoena to secure its own expert witness. Defense counsel additionally noted that the recess afforded her adequate time to prepare. In short, defendant makes only conclusory allegations of prejudice, we do not perceive any actual prejudice, and do not find that the trial court abused its great discretion in allowing Sgt. Rogers to testify. These assignments lack merit.

VI.
As the final assignment of error, the defense argues that the trial court erred in denying defendant's motion for mistrial on the ground that the prosecutor used profanity toward defense counsel in the presence of Sgt. Rogers during the recess. Taylor urges that the prosecutor's "demeanor, presence, and profanity" inhibited his attorney's ability to question the witness in preparing for cross examination.
After the close of all the evidence, defense counsel moved for mistrial because the prosecutor was present when she was allowed to interview Sgt. Rogers, and because the prosecutor used profanity towards her. However, we note that during or immediately following the recess, defense counsel made no effort to then object to the prosecutor's presence and alleged disparaging remarks. In fact, the prosecutor acknowledged that there was a "heated discussion, [and] feelings may have been bruised on both sides" but she accepted an apology.
Although Sgt. Rogers, and both counsel knew the facts concerning the "heated discussion," and the trial court indicated some knowledge of the incident, defense counsel did not attempt to make a record reflecting what happened during the recess. We therefore have no record upon which to review this assignment of error. Although the trial judge indicated that the event was inappropriate to put on the record, defense counsel acquiesced or at least failed to object to the court's inclination. Faced with a belated objection, a motion for mistrial, two versions of the "incident," no specific allegations of prejudice, and no record or proffer, we must defer to the trial court's judgment in denying the mistrial. This assignment lacks merit.

*890 Conclusion

Having checked the record for any errors patent, we find none. Accordingly, the conviction and sentence is affirmed.
AFFIRMED.
NOTES
[1] Taylor's first and ninth assignments of error have not been briefed. They are therefore deemed abandoned. URCA rule 2-12.4; State v. Wells, 29, 437 (La.App.2d Cir. 6/18/97), 697 So.2d 658.
[2] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Although no usable fingerprints were found at the scene of the crime, the prosecution called Sgt. Mark Rogers to testify as an expert in fingerprints and fingerprint identification. The testimony consisted in explaining to the jury the factors relevant in obtaining usable prints and that statistically, very few cases garner usable prints.
[4] 623 So.2d 178 (La.App. 2d Cir.1993).
[5] The State is required to furnish, under certain circumstances, the names of witnesses who will establish that the defendant was at the scene of the crime or will rebut the defendant's alibi witnesses. La.C.Cr.P. art. 727 B.